UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD A. SCACCIA,

                              Plaintiff,

v.                                                          5:07-CV-0207
                                                            (GTS/GJD)
COUNTY OF ONONDAGA, NEW YORK;
TIMOTHY H. COWIN, County Comm'r of Corr.;
KEVIN E. WALSH, County Sheriff; and
MARK JOHNSTON, M.D., Med. Dir. of
Corr. Health Servs.,

                              Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

SCACCIA LAW FIRM                              DANTE M. SCACCIA, ESQ.
  Counsel for Plaintiff
109 South Warren St., Suite 402
State Tower Bldg.
Syracuse, NY 13202

HON. GORDON J. CUFFY                          CAROL L. RHINEHART, ESQ.
Onondaga County Attorney                      Deputy County Attorney
  Counsel for Defendant
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Currently before the Court in this prisoner civil rights action, filed by Ronald Scaccia

("Plaintiff") against the County of Onondaga, County Commissioner of Corrections Timothy

Cowin, County Sheriff Kevin Walsh, and Medical Director of Correctional Health Services

Mark Johnston (collectively "Defendants") pursuant to 42 U.S.C. § 1983, is Defendants' motion

to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 9.)  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.      GENERAL BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint, filed on February 26, 2007, alleges that, at the Onondaga County Correctional Facility (the "Correctional Facility"), and the Onondaga County Justice Center (the "Justice Center") in Syracuse, New York, the individual Defendants violated Plaintiff's rights under the Eighth Amendment by (1) personally being deliberately indifferent to his serious medical needs (specifically, his hernia condition), and/or (2) failing to adequately train and supervise County personnel who were deliberately indifferent to his serious medical needs.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Plaintiff's Complaint further alleges that the County violated Plaintiff's rights under the Eighth Amendment because of a municipal policy or custom of impermissibly shifting responsibility for involuntarily incurred medical expenses from the County to its inmates, including Plaintiff.  (*Id*.)  Plaintiff's Complaint alleges that, as a result of these constitutional violations, he suffered significant and unnecessary pain due to a worsened hernia condition.  (*Id*.)  As relief for his injuries, Plaintiff requests, *inter alia*, monetary and punitive damages.  (*Id*.)

More specifically, Plaintiff alleges, while some members of the Correctional Facility and/or Justice Center staff appear to have responded unobjectionably to his hernia condition between March 12, 2003, and February 25, 2004, other members of the Correctional Facility and/or Justice Center staff were either negligent or reckless with regard to his treatment for that hernia condition during that time period.  (*Id*.)

2

The staff members who appear to have responded unobjectionably to Plaintiff's hernia condition included the following: (1) the unidentified staff member who excused Plaintiff from work on his first day of work in the Correctional Facility's laundry in July 2003, due to his hernia condition; (2) the unidentified nurse who saw Plaintiff for his hernia condition on September 27, 2003, and placed him on a list to be seen by a doctor; (3) the unidentified nurse who saw him on December 7, 2003, for his hernia condition; (4) Dr. Roy A. Smith, M.D., who [a] saw Plaintiff for his hernia condition on December 10, 2003, and January 27, 2004, twice referring him to a surgical clinic outside the Correctional Facility, [b] saw him for his hernia condition on February 16, 2004, sending him to the emergency room of an outside hospital, and [c] saw him for his hernia condition on February 17, 2004, consulting with County Health Commissioner Dr. Novick, prescribing Plaintiff medication, scheduling his immediate surgery, and later transferring him to the Justice Center pending that surgery; (5) the unidentified nurse who saw Plaintiff for his hernia condition on January 1, 2004, and encouraged him to write Defendant Johnston regarding his hernia; (6) the unidentified nurse who saw him for his hernia condition on January 12, 2004, and placed him on a list to be seen by a doctor; (7) the unidentified staff members of the Correctional Facility who ushered him directly to the medical unit on February 16, 2004, when he collapsed at work due to his hernia condition; (8) the unidentified members of the Correctional Facility medical staff who contacted a doctor by telephone regarding Plaintiff's hernia condition on February 16, 2004, and then sent Plaintiff to his housing unit with an instruction to stay in bed with his feet elevated; (9) the unidentified nurse who saw him for his hernia condition in his cell on February 16, 2004, and gave him a very large dose of Tylenol; (10) the unidentified nurse who saw him for his hernia condition on

February 17, 2004, and told him to let the medical staff know immediately if he experienced certain symptoms; (11) the unidentified members of the Correctional Facility medical staff who responded to his sick call request on February 18, 2004; and (12) the unidentified staff members in the Justice Center who provided him with the use of a wheelchair at the Justice Center.  (*Id*.)

The staff members who did not respond appropriately to Plaintiff's hernia condition included the following: (1) the unidentified nurse who conducted Plaintiff's initial screening on March 12, 2003, and cleared him for work assignments without limitations, despite his noted left inguinal hernia, left arm and/or shoulder injury, and restricted lifting ability; (2) the unidentified doctor who saw Plaintiff in the Medical Unit on October 15, 2003, but did not address his hernia problem; (3) the unidentified doctor who saw Plaintiff in the Medical Unit on November 15, 2003, but did not check his groin area for the hernia problem; (4) Defendant Johnston, who twice (on December 10, 2003, and January 28, 2004) prevented Plaintiff from attending the surgical clinic outside the Correctional Facility due to his approaching release date of February 25, 2004, thus causing Plaintiff to experience unnecessary pain; (5) the unidentified members of the Correctional Facility medical staff who did not respond to Plaintiff's requests for medical care between January 31, 2004, and February 16, 2004; (6) the "transporting officers" who, before Plaintiff was seen by the staff of the outside hospital on February 16, 2004, and February 20, 2004, required him to sign hospital paperwork accepting financial responsibility for the services required, and who (after learning that an operating room would not be available until the next day) checked with unidentified medical staff at the Correctional Facility and returned Plaintiff to the Correctional Facility; (7) a "Deputy Messina," as well as other unidentified deputies and nurses in the Justice Center, who ignored Plaintiff's painful hernia condition in the Justice

4

Center on February 19, 2004; and (8) Dr. John Michaels, M.D., of the Justice Center who told Plaintiff on February 23, 2004, that the treatment of his back pain would have to wait until after his release date.  (*Id*.)

Familiarity with the other factual allegations supporting Plaintiff's claims is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

### B.       Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), Defendants argue as follows: (1) based on Plaintiff's own factual allegations, his action is barred by the three-year statute of limitations governing claims arising under 42 U.S.C. § 1983 (Dkt. No. 9, Part 3, at 5-6 [Defs.' Memo. of Law]); (2) Plaintiff has failed to allege facts plausibly suggesting that Defendants (or their subordinates) were deliberately indifferent to Plaintiff's non-urgent hernia condition (*id*. at 8-9); (3) Plaintiff's claim against the County must be dismissed because he has failed to allege facts plausibly suggesting "any tangible connection between a municipal policy and his alleged injury or any existence of a violative policy" (*id*. at 6-9); (4) Plaintiff's claims against Defendants Cowin, Walsh and Johnston in their official capacities must be dismissed as the same as Plaintiff's claim against the County (*id*. at 7); (5) based on Plaintiff's factual allegations, Defendants are entitled to the affirmative defense of qualified immunity (*id*. at 10-11); and (6) Plaintiff has not alleged facts plausibly suggesting that any of the individual Defendants–each of whom was a supervisor–was personally involved in the Eighth Amendment violation alleged (*id*. at 10-11).

In Plaintiff's response to Defendants' motion to dismiss, he argues as follows: (1) his action was timely commenced because (a) for security reasons, employees of the County

withheld from Plaintiff information that would have led him to know of the harm giving rise to his claims, (b) the continuing violation doctrine renders timely his claims arising from acts occurring outside the limitations period, and (c) the equitable tolling doctrine excuses the one-day delay under the circumstances because the final day of the limitations period fell on a Sunday (Dkt. No. 13, Part 2, at 8-9 [Plf.'s Response Memo. of Law]); (2) his Complaint states a claim under the Eighth Amendment by alleging facts plausibly suggesting that Defendants (or their subordinates) consciously withheld necessary medical care for Plaintiff's urgent and painful hernia condition in order to save money (*id.* at 6-7); (3) his Complaint states a viable claim against the County by alleging facts plausibly suggesting a causal connection between a municipal custom or policy and Plaintiff's injuries (*id.* at 9-10); (4) Defendants have not established an entitlement to qualified immunity as a matter of law at this early stage in the proceeding (*id.* at 10-11); and (5) Plaintiff has alleged facts plausibly suggesting that Defendant Johnston (through his cancellation of Plaintiff's planned treatment on two occasions) and Defendants Cowin and Walsh (through their failure to train their subordinates) were personally involved in the Eighth Amendment violation alleged (*id.* at 7, 10).  Even construed with the utmost of special liberality, Plaintiff's Response Memorandum of Law does not address Defendants' argument that Plaintiff's claims against Defendants Cowin, Walsh and Johnston in their official capacities must be dismissed as the same as Plaintiff's claim against the County. (*See* Dkt. No. 13, Part 2 [Plf.'s Response Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim, pursuant to Fed.

R. Civ. P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id*. at 212, n.18 [citations omitted].[1]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id*. at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations

---

[1]       *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

omitted]; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. [citations omitted].[2]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed

---

[2]     *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

generously, in light of the special solicitude normally afforded *pro se* litigants).[3]  It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added].  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[4]

------------------------

[3]    *See*, *e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

[4]    For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care.  *Erickson*, 127 S. Ct. at 2199-2200.  Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court).  This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.  Prior to

9

As the Supreme Court recently explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft*, 129 S.Ct. at 1949 (citing Fed. Rule Civ. Proc. 8[a][2]).   Rule 8 "demands more than an unadorned, the-defendant- unlawfully -harmed-me accusation." *Ashcroft*, 129 S.Ct. at 1949.  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted).

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  This standard is applied with even greater force where the plaintiff alleges civil rights violations.  However, while the special leniency afforded to civil rights litigants somewhat loosens the procedural rules governing the form of pleadings, it does not completely relieve such a civil rights litigant of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.  Rather, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even civil rights litigants must follow.

---

the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).  The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

B.     **Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which is intended primarily for review by the parties. (*See* Dkt. No. 9, Part 3 [Defs.' Memo. of Law]; Dkt. No. 13, Part 2 [Plf.'s Response Memo. of Law].)

III.   **ANALYSIS**

A.     **Whether the Action was Timely Commenced**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claim because it was not timely commenced. Under the circumstances, the Court rejects Defendants' argument.

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted). "A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." *Shomo*, 579 F.3d at 181 (citation omitted).

Here, Plaintiff alleges facts plausibly suggesting that he did not know that Defendants were going to breach their (asserted) duty to give him hernia surgery while incarcerated until he was discharged from prison on February 25, 2004, without having had that surgery. (*See*, *e.g.*, Dkt. No. 1, ¶ 83.) Among other things, Plaintiff alleges that (1) referrals for his surgery were repeatedly made and cancelled, and (2) various individuals kept from Plaintiff information about the date and location of his (offsite) surgery for security reasons. (*Id.* at 27, 28, 37, 40, 53, 76,

11

80.)  As a result, the Court finds that the date on which the three-year limitations period starting

running was February 25, 2004 (the date on which he realized that the Correctional Facility was

not going to provide him with the required medical treatment).[5]

Plaintiff filed his Complaint in this action on Monday, February 26, 2007–three years and

one day after February 25, 2004.  Case law exists from within this Circuit holding that, where the

last day of the limitations period falls on a Sunday, an action filed on the following day is

timely.[6]  Applying such a rule appears particularly appropriate in this case, in which–although it

might be argued that an attorney registered on the Court's Electronic Case Filing System could

have filed a complaint on at any time on Sunday, February 25, 2007–Plaintiff's counsel was

exempted from having to comply with that System, under Section 2.1 of General Order # 22, as

an attorney admitted to practice in this Court more than fifty years ago.  As a result, there was no

way he could have filed this action on either Saturday, February 24, 2007, or Sunday, February

25, 2007.

For all these reasons, the Court finds that Plaintiff's action was timely commenced.  As a

---

[5]     The Court notes that, in reaching this conclusion, it need not, and does not, rely
on the continuing violation doctrine, which requires the existence of an ongoing *policy* (and
arguably a policy of *discrimination*).  *Shomo*, 579 F.3d at 181 ("To trigger the continuing
violation doctrine when challenging discrimination, the plaintiff must allege both the existence
of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of
that policy.") (citation omitted).

[6]     *See Daisley v. FedEx Ground Package System, Inc.*, 08-CV-4063, 2008 WL
5083009, at *3 (E.D.N.Y. Dec. 1, 2008) (where the statute of limitations for breach of contract
claims in New York is six years, and the cause of action accrues at the time of breach, a
complaint that was filed on September 15, 2008, six years and one day after any claim arising
out of conduct on September 14, 2002 may have accrued, was timely because the last day of the
limitations period fell on a Sunday, and "when the last day of the limitations period falls on a
Sunday–as it did in this case–that day is excluded and the period runs until Monday").

result, the Court denies Defendants' motion to dismiss to the extent that it is premised on this ground.

**B.      Whether the Complaint States a Claim for a Violation of the Eighth Amendment**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's Eighth Amendment claim because the Complaint fails to state a claim upon which relief may be granted.  Based on the factual allegations contained in Plaintiff's Complaint, the Court rejects Defendants' argument.

To state a claim under 42 U.S.C. § 1983 for deprivation of medical treatment in violation of the Eighth Amendment, a plaintiff must show that defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "To establish deliberate indifference, the plaintiff must prove that the prison official knew of and disregarded the plaintiff's serious medical needs." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (citations omitted).  "Deliberate indifference will exist when an official knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Barkley*, 219 F.3d at 137-38 (citations omitted).

As explained above in Part I.A. of this Decision and Order, generally, in his Complaint, Plaintiff alleges, while some members of the Correctional Facility staff and/or Justice Center staff appear to have responded unobjectionably to his hernia condition (e.g., Dr. Smith), other members of the Correctional Facility staff and/or Justice Center staff were either negligent or reckless with regard to promptly treating his hernia condition (e.g., Defendant Johnston), causing him to experience significant and unnecessary pain.  For example, among other things, Plaintiff alleges that, over time, he experienced the following symptoms, in chronological order: an

13

"aggravated" hernia, a "lump on his lower left back," increased pain, an enlarged hernia that had entered his scrotum, "unbearable" pain, "excruciating" pain that led to a physical collapse, an incarcerated hernia, constipation, nausea, headache, vomiting, confinement to a hospital bed, physical immobility without the use of a wheelchair, and the inability to eat.  (*See*, *e.g.*, Dkt. No. 1, ¶¶ 21, 22, 25, 30, 36, 41, 44, 45, 48, 57, 59, 60, 63, 76-82.)

Based on these factual allegations, the Court concludes that Plaintiff has sufficiently alleged facts plausibly suggesting both that he had a serious medical need, and that certain staff members at the Correctional Facility and Justice Center–including Defendant Johnston–knew of and disregarded Plaintiff's serious medical need.  The Court rejects Defendants' argument that, because Plaintiff received at least some medical care, and because Plaintiff had no right to the medical treatment of his choice, he was not denied medical care.[7]  Similarly, the Court rejects Defendants' argument that the only injury Plaintiff incurred was an expense to address a non-urgent matter.[8]

For all of these reasons, the Court denies Defendants' motion to dismiss to the extent that it is premised on this ground.  Whether Plaintiff has alleged facts plausibly suggesting that any

---

[7]    Defendants' argument overlooks the fact that the Complaint alleges that, as a result of repeatedly delaying Plaintiff's medical care and surgery, various staff members (including Defendant Johnston) worsened Plaintiff's condition to the point where he suffered unnecessary pain and where he could have suffered a further significant injury (including rupturing of the hernia).  It must be remembered that "a serious medical need arises where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 (S.D.N.Y. Jan. 23, 2004) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]) (other citation omitted).

[8]    Setting aside any financial injury that Plaintiff did or did not suffer, Plaintiff has alleged facts plausibly suggesting that he unnecessarily suffered extreme pain for a period of weeks due to his delayed hernia surgery.

Defendant other than Defendant Johnston is liable for that Eighth Amendment violation is another issue, which shall be addressed below.

### C.    Whether the Complaint Alleges a Causal Connection Between Plaintiff's Injuries and a Policy or Custom of the County

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claim against the County because the Complaint fails to allege facts plausibly suggesting a causal connection between Plaintiff's injuries and a policy or custom of the Correctional Facility and/or Justice Center.  Based on the factual allegations of Plaintiff's Complaint, the Court accepts Defendants' argument.

"Although municipalities are considered 'persons' for purposes of 42 U.S.C. § 1983, a local government such as [a] County . . . may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Powers v. Gipson*, 04-CV-6338, 2004 WL 2123490, at *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 [1978]).[9]  This is because "[m]unicipalities are not subject to § 1983 liability solely on the basis of a *respondeat superior* theory." *Powers*, 2004 WL 2123490, at *2 (citations omitted).[10]  As a result, to establish a Section 1983 claim against a municipality, a plaintiff must prove two things: (1) "the plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his

---

[9]    *Accord*, *Harris v. Howard*, 08-CV-4837, 2009 WL 3682537, at *2 (S.D.N.Y. Oct. 30, 2009) ("In order to plead a claim under 42 U.S.C. § 1983 against a municipality, plaintiff must allege that a municipal policy or custom caused the deprivation of his constitutional rights.").

[10]    *Accord*, *Howard*, 2009 WL 3682537, at *2 ("A municipality may not be held liable under Section 1983 on the basis of *respondeat superior*.").

injuries"; and (2) "the plaintiff must [second] establish a casual connection–an affirmative

link–between the policy and deprivation of his constitutional rights."  *Id*.

Here, although Plaintiff alleges conclusorily that the County required other inmates to

execute agreements to assume financial responsibility for payment of their medical care at

medical facilities outside the Correctional Center and/or Justice Center (Dkt. No. 1, ¶ 86),

Plaintiff fails to allege facts plausibly suggesting that the County in fact imposed that

requirement on inmates other than Plaintiff (*see generally* Dkt. No. 1).  Moreover, it is

questionable whether Plaintiff has even alleged facts plausibly suggesting that the County

imposed such a "requirement" on him; rather, it appears that unidentified transporting officers

(none of whom is alleged to have been acting at the behest of, or in concert with, Defendant

Johnston) permitted Plaintiff to disclaim such financial responsibility for his care and continue to

receive care at an outside medical facility (contingent on the availability of its operating room).

(Dkt. No. 1, ¶¶ 50, 51, 70, 71.)

Similarly, although Plaintiff alleges conclusorily that the County had a policy or custom

of delaying the provision of medical care to other inmates until their release from custody (*see,*

*e.g.*, Dkt. No. 1, ¶¶ 11, 87), Plaintiff fails to allege facts plausibly suggesting that any other

inmate experienced a delay in receiving medical care (*see generally* Dkt. No. 1).  Moreover,

based on Plaintiff's own factual allegations, it appears that Defendant Johnston was not acting

pursuant to any County policy or custom when he (allegedly) delayed Plaintiff's hernia surgery.

(*Id*.)  Rather, it appears Defendant Johnston was acting in contravention of the actions of

numerous other County employees, including Dr. Roy A. Smith, Dr. Novick, and the several

other doctors and nurses who appear to have provided Plaintiff rather prompt and continuous

medical care during the time in question.  *See*, *supra*, Part I.A. of this Decision and Order.  The

Court acknowledges that Plaintiff alleges that, on February 23, 2004, Dr. John Michaels, M.D.,

of the Justice Center, told Plaintiff that the treatment of his back pain would have to wait until

after his release date.  (Dkt. No. 1, ¶ 79.)  However, he did so a mere two days before Plaintiff's

scheduled release date, giving his explanation a certain quality of reasonableness given the

common delays in scheduling and administering medical treatment in correctional facilities.

(*Id*.)  Moreover, it appears that, at the time, Dr. Michaels did not delay such treatment of

Plaintiff's complaints of vomiting and constipation.  (*Id*.)  Finally, Plaintiff's Complaint contains

no factual allegation plausibly suggesting that Dr. Michaels was acting at the behest of, or in

concert with, Defendant Johnston, who is alleged to have been employed by an entirely different

County department or agency.  (*See generally* Dkt. No. 1.)  Finally, the Court notes that,

according to Defendant Johnston's (alleged) stated reason for delaying Plaintiff's hernia surgery,

his motivation was not to save money (as a matter of policy) but to avoid urgent care in prison

for what he characterized as Plaintiff's "non-urgent" condition.  (*See* Dkt. No. 1, ¶¶ 28, 37, 40.)

     For these reasons, the Court grants Defendants' motion to dismiss Plaintiff's Eighth

Amendment claim against the County.

     **D.**    **Whether the Claims Against Defendants Cowin, Walsh and Johnston in Their Official Capacity Should Be Dismissed**

     As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

Plaintiff's claim against Defendants Cowin, Walsh and Johnston in their official capacity,

because that claim is the same as Plaintiff's claim for municipal liability against the County

(which has already been dismissed).  Based on the factual allegations of Plaintiff's Complaint,

and the fact that Plaintiff has failed to respond to this argument (thus lightening Defendants'

burden with respect to the argument), the Court accepts Defendants' argument.

To the extent Plaintiff sues Defendants Cowin, Walsh and Johnston in their official capacity, Plaintiff's claims are equivalent to a claim against the County and therefore subject to dismissal for the reasons just discussed above in Part III.C. of this Decision and Order. *See Powers*, 2004 WL 2123490, at *2 ("To the extent that plaintiff sues the remaining defendants in their official capacity, plaintiff's claims are equivalent to a claim against the County of Erie and therefore subject to dismissal for the reasons just discussed [i.e., the plaintiff's failure to allege facts plausibly suggesting the existence of a municipal policy or custom that caused the violation of his constitutional rights.") (citations omitted); *Bangura v. County of Nassau*, 07-CV-2966, 2009 WL 57135, at *3 (E.D.N.Y. Jan. 7, 2009) ("[T]he claims against Reilly in his official capacity are duplicative of his claims against the County" and therefore must be dismissed.").

Moreover, the Court notes that "municipalities, and municipal employees sued in their official capacities, are not liable for punitive damages, and accordingly, any claims for punitive damages against the County or any County employee sued in his official capacity, are dismissed." *Dzwonczyk v. Syracuse City Police Dept*., 08-CV-0557, 2008 WL 5459147, at *16 (N.D.N.Y. Dec. 22, 2008) (McCurn, J.) (collecting cases). Because the Court interprets this rule as being premised on the doctrine of sovereign immunity under the Eleventh Amendment (and the absence of a waiver of that immunity in 42 U.S.C. § 1983), the Court concludes that the rule may be applied *sua sponte*, pursuant to Fed. R. Civ. P. 12(h)(3). *See City of New Port v. Fact Concerts, Inc.*, 453 U.S. 247, 259-266 (1981) (indicating that rule in question is based on doctrine of sovereign immunity); *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) (explaining that, where it has been successfully demonstrated that a defendant is entitled to

18

sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the claim in question, and it "must be stricken from the docket").

For these reasons, the Court grants Defendants' motion to dismiss Plaintiff's claim against Defendants Cowin, Walsh and Johnston in their official capacity.  In addition, the Court *sua sponte* dismisses Plaintiff's claim for punitive damages.

### E.      Whether Defendants Are Entitled to a Qualified Immunity Defense

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claims against them based on the doctrine of qualified immunity.  To the extent that any Defendants have already been dismissed from this action, the Court need not, and does not, evaluate this argument as it applies to them.  To the extent that any Defendants have not already been dismissed from this action, the Court rejects Defendants' argument based on the factual allegations of Plaintiff's Complaint, and for the reasons stated by Plaintiff in his memorandum of law in opposition to Defendants' motion to dismiss.

The Court would add only that discovery does not appear to have yet begun in this action.  (Dkt. No. 15.)  *See Brown v. DeFrank*, 06-CV-2235, 2006 WL 3313821, at *29 (S.D.N.Y. Nov. 15, 2006) ("The right to be free from deliberate indifference to serious medical needs is well established and was at the time of defendants' conduct.  The issue thus is whether defendants' actions [or failure to act] with respect to Brown's hip condition were subjectively unreasonable so as to constitute deliberate indifference.  The Court cannot say on a motion to dismiss that any defendant's actions were so clear as to entitle them to dismissal on qualified immunity grounds at this stage of the case.").

For these reasons, the Court denies Defendants' motion to dismiss to the extent that it is

premised on this ground.

 **F.** **Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendants Cowin, Walsh and Johnston–All Supervisors–Were Personally Involved in the Eighth Amendment Violation Alleged**

 As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claims against Defendants Cowin, Walsh and Johnston because Plaintiff has not alleged facts plausibly suggesting that any of those Defendants–each of whom was a supervisor–was personally involved in the Eighth Amendment violation alleged. The Court rejects this argument as it applies to Defendant Johnston, for the reasons stated above in Part III.B. and III.C. of this Decision and Order; however, the Court accepts this argument as it applies to Defendants Cowin and Walsh.

 "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Excell v. Woods*, 07-CV-0305, 2009 WL 3124424, at *20 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.) [citations and internal quotation marks omitted]. "In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant." *Excell*, 2009 WL 3124424, at *20 [citation omitted]. "If the defendant is a supervisory official, such as a [deputy superintendent of a prison], a mere 'linkage' to the unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct." *Id*. [citations omitted]. "In other words, supervisory officials may not be held liable merely because they held a position of authority." *Id*. [citation omitted]. "Rather, supervisory personnel may be considered 'personally involved' only if they (1) directly participated in the violation, (2) failed

to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring." *Id.* [citations omitted].

Here, setting aside Plaintiff's conclusory allegations of liability on the part of Defendants Cowin and Walsh, Plaintiff's sole factual allegations giving rise to that liability turn merely on the following: (1) those two Defendants' alleged roles as policymakers (a theory of liability that fails given the absence of factual allegations that there existed any municipal policy or custom under the circumstances); and/or (2) those two Defendants' positions as high-ranking supervisors of the Correctional Facility and Justice Center respectively, the staffs of which they were responsible to train and supervise (*see* Dkt. No. 1, ¶¶ 6, 7, 12, 14, 92, 93).  There are simply no other factual allegations against those two Defendants.  (*See generally* Dkt. No. 1.)  Simply stated, Plaintiff's claims against Defendants Cowin and Walsh hinge entirely on their roles as supervisors of individuals who (allegedly) violated Plaintiff's constitutional rights.  (*Id.*) Notably, Plaintiff alleges no facts plausibly suggesting how Defendants Cowin and Walsh failed to train and/or supervise their subordinates.  (*Id.*)

For these reasons, the Court denies Defendants' motion to dismiss to the extent that it is premised on the (asserted) lack of personal involvement of Defendant Johnston, but grants Defendants' motion to dismiss to the extent that it is premised on the lack of personal involvement of Defendants Cowin and Walsh.

### G.      Dismissal Without Prior Leave to Amend

The Court is cognizant of Plaintiff's right to amend his Complaint once as a matter of course before he has been served with a responsive pleading. *See* Fed. R. Civ. P. 15(a)(1). However, the Court notes that, during the two-and-a-half-year period during the pendency of Defendants' motion to dismiss (which of course is not a responsive pleading), Plaintiff has not exercised that right.  Moreover, the Court has some skepticism regarding the ability of Plaintiff to cure the pleading defects in his claims against the County, Defendant Cowin and Defendant Walsh, given the fact that those claims (which were drafted by an attorney) appear in a Complaint that is organized, thorough and otherwise relatively detailed.

For these reasons, the Court dismisses Plaintiff's claims against the County, Defendant Cowin and Defendant Walsh without first *sua sponte* giving Plaintiff an opportunity to amend those claims.  Rather, the Court simply dismisses those claims without prejudice, permitting Plaintiff to either amend them before an Answer is filed, or move to amend them after an Answer is filed, should he so choose.  The Court notes that it dismisses Plaintiff claims against Defendants Cowin, Walsh, and Johnston in their official capacity, and his claim for punitive damages, with prejudice, due to the lack of a possibility that he can cure the substantive defects in them.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's claim for punitive damages is *sua sponte* **<u>DISMISSED</u> with prejudice**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part** as follows:

22

(1)      Plaintiff's Eighth Amendment claim against the County is **<u>DISMISSED</u>**

**without prejudice**;

(2)      Plaintiff's Eighth Amendment claims against Defendants Cowin, Walsh,

and Johnston in their official capacity are **<u>DISMISSED</u> with prejudice**;

(3)      Plaintiff's Eighth Amendment claims against Defendants Cowin and

Walsh are **<u>DISMISSED</u> without prejudice**; and

(4)      Plaintiff's Eighth Amendment claim against Defendant Johnston in his

individual capacity currently **<u>REMAINS PENDING</u>** in this action; and it is further

**ORDERED** that Defendant Johnston's answer to the complaint must be filed on or

before **<u>1/4/10.</u>**

Dated: December 15, 2009
           Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge